OTEIZA *v.* MARTÍNEZ.

APPEAL from the District Court of San Juan.

No. 52.—Decided June 4, 1906.

APPEAL—EVIDENCE—BILL OF EXCEPTIONS—STATEMENT OF FACTS—STENOGRA-PHER'S NOTES.—In order that the Supreme Court may consider on appeal the evidence taken at the trial, it is necessary that the same be set forth in a bill of exceptions or statement of facts, and the stenographer's notes cannot be used as a substitute for either of these documents.

The facts are stated in the opinion.
*Mr. Acuña* for appellant.

*Mr. Alvarez Nava* for respondent.

MR. CHIEF JUSTICE QUIÑONES delivered the opinion of the court.

This is an appeal taken by counsel for Francisco Javier de Oteiza from a judgment rendered by the District Court of San Juan in the above-mentioned suit, dismissing the complaint filed by said Oteiza, and taxing the costs against him.

The facts in this case are the following:

On February 26, 1904, Attorney Eduardo Acuña Aybar, on behalf of Francisco Javier de Oteiza, filed the complaint, the origin of this litigation, against José Martínez Llonin, a resident of the town of Río Piedras, alleging the following facts as the grounds thereof:

"1. That by deed executed on May 12, 1864, before Notary Juan Basilio Nuñez, Mrs. Josefa Rodríguez Lagranda, accompanied by her legitimate husband, Juan José Coghen, at that time a judge of the tribunal of accounts of this province, sold to Francisco Javier de Oteiza a tract of land consisting of 112 *cuerdas,* situated in the *barrio* of Monacillo, within the municipality of Río Piedras, bounded as follows: By other lands belonging to the vendor, lands of José del Toro, Estate of Vizcarrondo, lands of Rodulfo Zeno and the Estate of Muriel; the land sold having the metes and bounds described in the certificate issued by Surveyor José Antonio Calderón, which is one of the exhibits, as shown by the certified copy of said deed, marked No. 1 and attached to the complaint.

"2. That by another deed, authenticated by Notary Gervasio Puente Acosta, in this city, on May 20, 1868, the aforementioned Juan José Coghen sold to Mr. Oteiza, for the price of 16,000 *escudos fuertes,* an estate situated within the municipality of Río Piedras, *barrio* of Monacillo, at the place called Quebrada Enmedio, consisting of 300 *cuerdas* of land, more or less, with a dwelling house and other buildings, the principal adjoining property being the lands of the Estate of Rafael Navajas, Joaquín Leandro Solis and the Estate of Vizcarrondo, as shown by the accompanying deed included in the list and marked No. 2.

"3. That Oteiza personally possessed the estate described, quietly and peacefully, from the dates of their respective purchases until the year 1874.

"4. That in said year and by reason of said Oteiza having been elected a deputy·to the *Cortes,* he was obliged to change his place of residence to Madrid, and by reason of this office he left the care and administration of these estates and of the other property he possessed to Juan Coghen y Oliver, who, as such administrator, held said estates until the date of his death, which occurred in Río Piedras, on November 7, 1893.

"5. That two years after the death of Mr. Coghen Oliver, which occurred on the above-mentioned ·date, his · son, Juan Coghen y Campos, instituted proceedings in the Municipal Court of Río Piedras to establish the possession of an estate of 400 *cuerdas* situated in that municipal district, in the *barrio* of Monacillo, bounded as follows: On the east by property belonging to Joaquín Solis and Andrew O'Kelly; on the north by property belonging to said Solis; on the south by the road running from Río Piedras to Guainabo; and on the west by property belonging to Francisco Yorge.

"6. The petitioner having declared that the estate described had been acquired by him by inheritance from his legitimate father, Juan Coghen y Oliver, and the fact of the possession having been established by Witnesses Antonio Alvárez y Fernández and Andrés O'Kelly y Roman, and that the taxes had been paid in his name since the year 1893, the proceedings were approved, and on August 28, 1895, the property was ordered to be admitted to record in the registry of property, said record being entered on September 27 of the same year.

"7. That by deed executed in this city on September 7 of said year 1895, Juan Coghen y Campos sold· the said estate to José Martínez Llonin, which title of ownership was likewise recorded in the registry of property.

"Upon which grounds and such legal conclusions as he considered pertinent, the complainant closed with the prayer that the court in due time render judgment declaring that the estates described in the first and second allegations of the complaint, now possessed and enjoyed by the defendant under the description and with the boundaries resulting from the grouping thereof by Juan Coghen y Campos at the time of recording their possession, are the property of, and belong in full ownership to, the plaintiff, Francisco Javier de Oteiza; that as a consequence of such declaration the court also declare null and void the deed of possession of said Coghen Campos, the deed of conveyance executed by the latter to José Martínez Llonin, of September 7, 1895, and also the records of said deeds in the registry of property; and

that an order issue for the reinstatement of Francisco Javier de Oteiza in the possession of said estates and the restitution by the defendant of the fruits produced since the date of their acquisition, with the costs against said defendant.''

The latter in turn, represented by Attorney Antonio Alvárez Nava, denied the complaint in his answer, alleging the following facts in support of his denial:

"First. On May 12, 1864, by deed executed before Acting Notary Juan Basilio Nuñez, Mrs. Josefa Rodríguez Lagranda simulated a sale to Francisco Javier de Oteiza of a rural estate consisting of 102.62 *cuerdas,* for the purpose of preventing it from falling into the hands of the creditors of her husband, Juan José Coghen y Oliver. The alleged price stated in the deed was that of 2,000 *pesos,* 400 of which Mrs. Lagranda acknowledged to have received previously, the remaining 1,600 to be paid later, the fact being that neither the former nor the latter sum was ever delivered. It is provided in the deed that the estate 'cannot be sold, conveyed nor mortgaged without the express consent of the vendor,' a strange condition, the reason for which cannot be deduced either from the statement or the contents of the clauses of the deed, the only acceptable explanation being the simulation of the contract.

"Second. By deed of May 20, 1868, when he was on the verge of going into insolvency, Juan José Coghen y Oliver also simulated the sale to Oteiza of a rural estate consisting of 300 *cuerdas,* more or less, for the same purpose of preventing it from falling into the hands of his creditors. In this deed it is alleged that as Coghen had, by private agreement, sold the estate some time before to Oteiza, the latter relieves the alleged vendor from the formality of presenting the document showing that the estate is free from encumbrances; and with regard to the price, it is stated that 'this sale is made by Oteiza for the sum of 16,000 *escudos fuertes,* foreign money current in trade, of which sum he acknowledges to have received, to his full satisfaction under the private agreement he had made, the sum of 6,000 *escudos* on July 1, 1866; a similar sum on January 1, 1867, and 4,000 *escudos* on July 1st of the same year; for which sums he had given the purchaser partial receipts for his temporary protection.

"Third. The two tracts of land, described in the deeds referred to in the two foregoing statements of fact, adjoin each other and form a single estate, which is that referred to in the complaint.

"Fourth. A settlement having been made between Coghen and his creditor, the concealment of his property became no longer necessary, and for this reason, on January 7, 1870, he executed to Oteiza under the name of a 'mortgage obligation' a deed which should be called a declaration of the nullity and rescission of a contract, in which, at any rate, he returns to Coghen the title of ownership. The falsity of the deed of May 20, 1868, is openly confessed therein, inasmuch as it affirmed that said delivery of the price given with such precise specification of amounts and dates was not true.

"It is of great importance to us to specify and set forth the contents of the last deed not only on account of the light which it throws on prior and subsequent acts, but also on account of the judicial relations which in any event it directly creates between Oteiza, now the plaintiff, and Coghen, whose rights of ownership subsequently passed by sale to my client.

"Oteiza begins with the statement that 'although by said deed of May 20, 1868, it appears that the purchaser paid to the vendor 8,000 *pesos* cash, 4,200 *pesos* remained in the possession of said purchaser.'

"Let it be noted here that in addition to the falsity, acknowledged and confessed by Oteiza, there is an evident contradiction between the former deed in which it is said—dates and amounts being specified—that the price had been previously paid; and the latter deed, in which Oteiza states that the price had been paid in cash, which proves that there was no price, and, consequently, no contract in either form.

"As a consequence of this declaration 'the said Coghen acknowledges that he is indebted in the said sum of 4,200 *pesos,* current money, which he binds himself to pay in the installments mentioned' (in another section of the deed).

"As a guarantee of the fulfillment of this obligation and the payment of the costs, loss and damages, interest and deterioration, he pledged the estate referred to and all his present and future property, including his income as a retired employe, consisting of one-third of his salary when in active service, in the event that the estate should not be productive.

"In the said deed Oteiza 'finally, as the debt has its origin in the sale,' relinquishes the right of ownership and conveys and transfers the same to his creditor as the former owner of the said estate.

"Fifth. Oteiza did not pay to Coghen, nor to his successors, any part of said sum which he acknowledges he owes him, nor any amount as interest thereon.

"Sixth. Oteiza never had the usufruct or possession of that part

of the estate, to which the deed executed in his favor by Mrs. Lagranda refers, nor the part referred to in the deed executed to him by Coghen.

"Seventh. About 1872 or 1873 Oteiza left for Madrid and never returned to Porto Rico, leaving here as his only attorney in fact and manager of all his property Ramón Trigo, with whom he maintained a constant correspondence.

"Eighth. Since the departure of Oteiza from Porto Rico he has not exercised, nor attempted to exercise, either in person or through his attorney in fact, any act of ownership with reference to the estate in question; neither he nor his attorney in fact have possessed it; nor have they collected, or attempted to collect, any rents thereon; Oteiza never made any reference to this estate in his letters to his attorney in fact; nor, finally, has he performed any act tending to show that he considered himself its owner.

"Ninth. Josefa Rodríguez Lagranda died on July 4, 1868, leaving as her only property the estate of 102 *cuerdas*, the sale of which she had simulated in the deed to Oteiza referred to in the first statement of fact of this answer, and constituting as her only heir her son by her first marriage, Isidoro Uriarte.

"Tenth. Uriarte, upon the death of his mother, entered upon the possession of the estate which had belonged to her, sold it to his stepfather Coghen, and continued to enjoy the usufruct thereof until the purchaser had paid him the last installment of the sale price.

"Eleventh. In this manner Juan José Coghen y Oliver became the owner of the entire estate of 400 *cuerdas*, all of which he held at the time of his death, in 1893, and which passed by inheritance to his son, Juan Coghen Campos.

"Twelfth. Upon the latter becoming the owner of the said estate and not knowing of the existence of any written titles (none of which had been recorded in the registry of property), he instituted proceedings to establish the fact of the possession which both he and his predecessor in interest had been holding as owners. These proceedings were approved on August 28, and the possession was recorded in the registry of property on September 27, 1895.

"Thirteenth. By deed executed in this city on September 7, 1895, Juan Coghen Campos sold the aforementioned estate to José Martínez Llonin, and it was recorded in his name in the registry of property on November 7 of the same year.

"Fourteenth. Francisco Javier de Oteiza has not declared any property in the Treasury Department."

And invoking in his turn the grounds of law which he believed to support his rights, he concluded with the prayer that the court declare in due time:

"1. That the deed of sale of lands executed by Josefa Rodríguez Lagranda and Francisco Javier de Oteiza in this city, on May 12, 1864, before Notary Juan Basilio Nuñez, and the deed of the sale of an estate, also executed in this city on May 20, 1868, by Juan José Coghen and the said Francisco Javier de Oteiza, before Notary Gervasio Puente Acosta, are null and void.

"2. Or (in the event that the foregoing declaration does not lie) that Oteiza convey to Juan José Coghen the ownership of the estate referred to by the so-called mortgage deed which he executed in this city on January 7, 1870, before Notary Mauricio Guerra.

"3. That the conveyance of the estate by Juan Coghen Campos to José Martínez Llonin by the deed of sale of a rural estate executed by both in this city on September 7, 1895, before Notary Mauricio Guerra, under No. 667, is valid and effective and cannot be annulled by prior deeds which have not been recorded.

"4. That (in addition to and apart from this title of acquisition) Martínez Llonin acquired the ownership of the estate described in the deed mentioned in the foregoing paragraph by prescription.

"5. That, in any event, Oteiza lost his action for the recovery thereof by prescription.

"6. That the complaint should be dismissed, for the further reason that Oteiza has not declared in the Treasury the property which he alleges belongs to him.

"7. That in view of each and every one of the foregoing declarations the complaint be accordingly dismissed, with all the costs against the plaintiff."

The hearing having been had and the evidence presented by both parties, consisting of public and private documents and the testimony of witnesses having been taken, the District Court of San Juan rendered the following judgment:

"On March 9, 1905, in open court, this case was in its turn called for trial, both parties appearing through their counsel and announcing their readiness to proceed. Counsel for the plaintiff made his allegations, being followed by counsel for the defendant. The plaintiff

then submitted his evidence, which was taken, the defendant afterwards presenting his, which was also taken. The plaintiff, with the permission of the court, filed an amended complaint, and the defendant, also with the permission of the court, filed an amended answer; and, finally, the parties made their oral arguments, the hearing concluding on the following day, March 10, 1905.

"And the court, after having heard the pleadings, the evidence and the arguments, holds that the facts and the law are against the plaintiff; and therefore renders judgment declaring, and it does declare, and the plaintiff, Francisco Javier de Oteiza, is not entitled to recover anything from the defendant, José Martínez Llonin, in this litigation, and taxes the costs against said plaintiff. And this judgment, pronounced in open court this 28th day of March, 1905, is ordered to be entered."

Counsel for Francisco Javier de Oteiza took an appeal from this judgment, and the transcript of the record having been transmitted to this Supreme Court and the briefs having been filed, a day was set for the hearing, which was had with the attendance of counsel for the parties, who orally argued their respective cases.

It is clearly to be inferred from the facts alleged in the complaint and answer, respectively, that the question at issue in these proceedings is reduced to the determination of whether the plaintiff, now the appellant, Francisco Javier de Oteiza, has or has not proved the ownership of the estate he claims in the complaint; and it is evident that as the parties do not agree upon the facts, there is no other way of deciding this question than by examining the result of the evidence taken at the trial.

But in the present case this court is without the necessary means of making a comparative examination of all the evidence introduced by the parties, inasmuch as the appeal has not been prepared in the form prescribed by section 214 of the Code of Civil Procedure, namely, through a bill of exceptions or a statement of facts approved by the judge, with the intervention of the adverse party, which is the only proper means.

of authenticating in this Supreme Court the evidence taken in the lower court.

The record transmitted to this court contains a literal copy of the evidence presented by both parties in the action, consisting, as we have said, of public and private documents and the testimony of witnesses, but with no other authentication than the certificate of the reporter of the court below, which, as has been stated in numerous opinions of this Supreme Court, is not an adequate manner of identifying the evidence in such a way as to permit this Supreme Court to examine and judge whether or not it has been properly weighed by the trial court, the proper mode being a bill of exceptions or a statement of facts prepared in due form; which requisite has not been complied with in this case by the appellant.

As there is no possibility of declaring that the court below has erred in its finding upon the evidence presented by Francisco Javier de Oteiza, as alleged by counsel for the appellant in his brief, the findings of the lower court on the evidence must prevail; and, consequently, the undersigned judge believes that the judgment rendered by the District Court of San Juan, appealed from on March 28, 1905, should be affirmed, with the costs of the appeal against the appellant.

*Affirmed.*

Justices Hernández, Figueras, MacLeary, and Wolf concurred.